John ROCK, Appellant,

v.

Joyce ROY, Appellee.

No. 09 84 309 CV.

Court of Appeals of Texas,
Beaumont.

June 6, 1985.

Rehearing Denied June 26, 1985.

Jon Burmeister, Moore, Landry, Garth & Jones, Beaumont, for appellant.

Bernard Packard, Beaumont, for appellee.

OPINION

DIES, Chief Justice.

On August 7, 1979, appellant John Rock signed an installment note to the Allied Merchant's Bank to purchase a mobile home. The note provided for 119 monthly

installments of $162.63 each. Appellant also secured a fire insurance policy on the mobile home which listed Allied as a lien holder.

By a bill of sale dated March 3, 1982, appellant sold the mobile home to appellee. Appellee made a cash payment to appellant and, thereafter, sent appellant the monthly note payment due Allied, and the insurance premiums. Appellant would then send the payments due the bank and the insurance company. After appellee had paid 14.6% of the amount due Allied (but through appellant), the mobile home burned. The policy of fire insurance paid $15,300 to Allied as lien holder. After the lien was paid off, approximately $6,600 remains in the bank, which forms the basis of this dispute.

Appellant sued, contending that 85.4% of this amount was due him since, at the time of the fire, appellee had paid (through him) only 14.6% of the amount owed the bank. In a bench trial, the trial court awarded the entire $6,600 to the purchaser, appellee, which brings this appeal.

Appellant has eight points of error, mostly challenging the findings of fact and conclusions of law made by the trial court. No good purpose would be served in setting forth these points of error; suffice it to state, the only question we are called on to answer is: Who gets this money?

The bill of sale from appellant to appellee covering the mobile home (signed by both parties) contained the following provisions:

"[Appellant] (seller) does hereby grant, sell, transfer and deliver unto [appellee] (Purchaser) ... [the mobile home] 89 payments @ $162.63 @ 12.26% Interest per annum, due the 10th of each month beginning the 10th of March, 1982 and paid to [appellant], inreturn [sic] he will [send] [appellee] a paid receipt from bank. Trailer to be paid off by 8/15/89. All insurance and taxes to be paid by [appellee]. After 10th day late period all interest is to be paid by [appellee], on final payment title and transfer is to be made out to [appellee]. Trailer is not to be moved unless approved by [appellant]. If payment is late ten days after due date, trailer may be repossessed by Seller, [appellant]."

Somewhat surprisingly, we have not been able to find a Texas case with precisely these facts. We do, however, find this general language in 32 TEX.JUR.2d *Insurance* sec. 455, at 683 (1962), which seems persuasive:

"The proceeds of insurance are payable to the person who is shown to have been the owner of the damaged or destroyed property, that is, to the person or persons on whom the loss falls and who are parties insured within the meaning of the policy...."

While, of course, appellee was not named on the policy of fire insurance as a beneficiary, she was, at the time of the fire, the owner of the mobile home, subject to repossession by appellant for failure to make the payments.

Let us suppose that there was no fire insurance policy involved. Would anyone urge that if the fire occurred before all payments were made, appellee's remaining debt to appellant would be extinguished? Or, stated another way, if the consideration for sale of the trailer was the 119 monthly payments, which were not financed by Allied, and if there occurred a fire before they were all paid, would not appellee still be liable to appellant for those payments not paid before the fire?

All of appellant's points of error are overruled.

The judgment of the trial court is affirmed.

Affirmed.